UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARQUES NEAL | CIVIL ACTION |
| VERSUS | NO. 17-5313 |
| WHOLE FOODS MARKET, INC. & WHOLE FOOD COMPANY, INC. | SECTION "R" (5) |

## ORDER AND REASONS

Before the Court is Defendant Whole Food Company, Inc.'s partial motion to dismiss.[1] For the following reasons, the Court grants the motion.

## I. BACKGROUND

This case arises out of claims of racial discrimination in employment.[2] Plaintiff Marques Neal began working for Whole Foods in Houston, Texas in March 2014.[3] In June 2015, plaintiff transferred to a Whole Foods store in Metairie, Louisiana.[4] Plaintiff is African-American, and he alleges that he experienced racial discrimination, a hostile work environment, and unlawful

---

[1] R. Doc. 35.
[2] R. Doc. 34.
[3] *Id.* at 3 ¶ VII.
[4] *Id.* at 5 ¶ XVI.

retaliation while employed by Whole Foods between March 2014 and June 2016.[5]

Specifically, plaintiff asserts that his supervisor and coworkers in Houston engaged in inappropriate and discriminatory conversations about race, including discussions about slavery and Bill Cosby's alleged sexual misconduct.[6] According to the amended complaint, plaintiff reported these incidents to Whole Foods management but no disciplinary action was taken.[7] Plaintiff alleges that he continued to experience discrimination after transferring to the Metairie store.[8] Plaintiff asserts that he and other African-American employees were often subject to verbal abuse in the workplace, and that he experienced and observed non-African-American supervisors treating African-American team members in a degrading manner that was distinct from the treatment of non-African-American employees.[9]

The amended complaint specifically alleges that plaintiff's immediate supervisor in Metairie displayed an offensive image of an African-American man on his computer for several days and treated plaintiff less favorably than

---

[5] *Id.* at 2 ¶ VI.
[6] *Id.* at 3.
[7] *Id.* at 3 ¶ X.
[8] *Id.* at 5 ¶ XVI.
[9] *Id.* at 5 ¶ XVII.

non-African-American employees with regard to work duties and scheduling requests.[10] Plaintiff asserts that he contacted the Whole Foods regional office multiple times to report racial discrimination and other management issues in the meat department.[11] In late May 2016, plaintiff refused a request from a customer to grind whole bone-in chickens.[12] In response, plaintiff's supervisor allegedly berated and humiliated plaintiff in front of the customer and threw a chicken at him.[13] Plaintiff asserts that he never observed similar treatment of any non-African-American employees, and he believes this conduct was motivated by racial animus.[14] Plaintiff was subsequently written up for insubordination and suspended indefinitely.[15]

After his suspension, plaintiff completed a charge of discrimination with the Equal Employment Opportunity Commission.[16] Plaintiff was later terminated from his position at Whole Foods.[17] On May 26, 2017, plaintiff filed suit against defendants Whole Foods Market, Inc. and Whole Food Company, Inc., alleging racial discrimination, religious discrimination, a

---

[10] *Id.* at 5-7.
[11] *Id.* at 8 ¶ XXV.
[12] *Id.* at 8 ¶ XXIV.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 8-10.
[16] *Id.* at 10 ¶ XXX.
[17] *Id.* at 10-11 ¶ XXXIII.

hostile work environment, unlawful retaliation, and failure to pay wages and overtime.[18] The complaint asserts claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act, the Fair Labor Standards Act, and state law.[19]

On January 22, 2018, the Court dismissed with prejudice plaintiff's Title VII claims that involve events in Houston, Texas before June 2015 because such claims are time-barred.[20] The Court dismissed without prejudice plaintiff's claims of religious discrimination under Title VII and a racially hostile work environment and racial discrimination under Title VII and 42 U.S.C. § 1981.[21] The Court granted leave to amend as to these claims.[22] Plaintiff's retaliation claims were not dismissed. Plaintiff timely filed an amended complaint.[23] In response, defendant Whole Food Company again moves to dismiss the claims for a hostile work environment, racial discrimination, and religious discrimination.[24]

---

[18] R. Doc. 1. Whole Food Company is the Louisiana subsidiary of Whole Foods Market, and plaintiff's allegations are directed at both defendants collectively. *See* R. Doc. 16; R. Doc. 34 at 2 ¶ VI.
[19] R. Doc. 1 at 8 ¶ XXVIII.
[20] R. Doc. 33 at 19.
[21] *Id.*
[22] *Id.*
[23] R. Doc. 34.
[24] R. Doc. 35.

4

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there

is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Religious Discrimination

In response to defendant's motion to dismiss with prejudice plaintiff's claim of religious discrimination, plaintiff maintains that he has not reasserted that claim in the amended complaint.[25] The Court's January 22, 2018, order put plaintiff on notice that failure to timely amend his complaint would result in dismissal of his claim with prejudice.[26] Plaintiff had a "fair opportunity to present [his] case" as to religious discrimination, and the Court dismisses his religious discrimination claim with prejudice. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

### B. Racial Discrimination

Plaintiff brings claims of racial discrimination under Title VII and 42 U.S.C. § 1981.[27] Both statutes prohibit racial discrimination in employment. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455 (2008). Claims under Title VII and § 1981 are subject to the same substantive legal

---

25  R. Doc. 36 at 4.
26  R. Doc. 33 at 19.
27  R. Doc. 34 at 12 ¶ XXXVII.

6

standards, and they differ only in their statutes of limitations and administrative exhaustion requirements. *See Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 992 (5th Cir. 2005); *see also Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). The Court thus applies the same analysis to plaintiff's claims under both statutes.

### 1. *Hostile Work Environment*

An employee has a cause of action for racial discrimination under Title VII and § 1981 "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted); *see also Mendoza v. Helicopter*, 548 F. App'x 127, 128-29 (5th Cir. 2013). This standard requires extreme conduct, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted).

In evaluating hostile work environment claims, courts consider the totality of the circumstances, including "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or

7

humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (internal citation omitted). A plaintiff must subjectively perceive the environment to be abusive, and the work environment must be objectively hostile or abusive. *See Harris*, 510 U.S. at 21-22.

As explained in the Court's January 22, 2018 order,[28] plaintiff's allegations regarding his employment in Houston are not sufficiently related to alleged discriminatory conduct in Metairie to make these incidents "part of the same actionable hostile work environment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). The Court dismissed plaintiff's Title VII claims with prejudice insofar as they involve events that occurred in Houston, Texas before June 2015.[29] Plaintiff asserts that incidents in Houston relate to a pattern of ongoing retaliation.[30] But plaintiff's retaliation claims are not the subject of this motion to dismiss.

---

[28] R. Doc. 33 at 8-9.
[29] *Id.* at 19. Defendant did not move to dismiss plaintiff's § 1981 claims as time-barred, and the Court did not dismiss those claims with prejudice. But events in Houston are not relevant to plaintiff's § 1981 hostile work environment claim because the Houston incidents do not form part of the same employment practice as the alleged incidents in Metairie.
[30] R. Doc. 34 at 2 n.2, 4-5; R. Doc. 36 at 6.

8

Accordingly, the Court does not consider events in Houston in evaluating plaintiff's hostile work environment claim.

Excluding incidents that took place in Houston, plaintiff identifies six instances of alleged race-based harassment at defendant's store: (1) his supervisor displayed a racially offensive image on his computer for several days; (2) he was often scolded in a condescending manner; (3) he was subject to retaliation by his manager, Jeff Zerwick, because Zerwick was aware of Neal's complaints of racial discrimination at the Houston store; (4) his immediate supervisors enforced regulations on plaintiff that were not enforced on non-African-American team members, such as requiring plaintiff to complete daily poultry logs and ordering him to grind bone-in chickens; (5) his scheduling requests were either denied or ignored whereas his non-African-American coworker's scheduling requests were routinely granted; and (6) he was berated by his superiors in a meeting until he felt physically ill, and was then suspended and later terminated because of his complaints of racial discrimination and harassment.[31]

These factual allegations are insufficient to create the reasonable inference that defendant is liable for a hostile work environment. The amended complaint asserts that plaintiff's immediate supervisor displayed a

---

31    R. Doc. 36 at 8-9.

highly offensive image of an African-American male as a screensaver or background image on his workplace computer for several days.[32] This image allegedly depicted an African-American man with apelike characteristics, including copious amounts of hair on his face, arms, hands, and knuckles.[33] According to the amended complaint, one of plaintiff's coworkers opined that the image resembled plaintiff.[34] Zerwick, the store manager, allegedly looked at the image, laughed, and failed to take any remedial action.[35]

The Fifth Circuit has explained "that intentionally comparing African-Americans to apes is highly offensive such that it contributes to a hostile work environment." *See Henry v. CorpCar Servs. Houston Ltd.*, 625 F. App'x 607, 612 (5th Cir. 2015). But the amended complaint does not allege that plaintiff's supervisor or coworkers compared either plaintiff or the man in the image to an ape. The image at issue is attached to plaintiff's amended complaint.[36] It is a photograph of an extremely hairy man standing with his arms crossed.[37] Beyond the unusual amount of hair, the image does not indicate any connection between the man in the photograph and an ape.

---

[32] R. Doc. 34 at 5-6 ¶ XVIII.
[33] *Id.* at 6 ¶ XVIII.
[34] *Id.*
[35] *Id.*
[36] R. Doc. 34-1.
[37] *Id.*

That plaintiff perceived the man in the image to have apelike characteristics does not render the display of this image comparable to cases involving explicit monkey references directed at African-American employees. *Cf. Henry*, 625 F. App'x at 612-13 (woman hired to perform in a gorilla suit at an employee meeting scheduled around Juneteenth "repeatedly emphasized the 'black' aspects of her gorilla suit" and "touched employees and sat in their laps while making comments that were both sexually suggestive and racially degrading"); *Allen v. Potter*, 152 F. App'x 379, 382 (5th Cir. 2005) (African-American plaintiffs alleged that they were required to work in a cage and that coworkers made comments like "Look at the monkeys," and "Don't feed the monkeys"); *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (plaintiffs were subjected to racist remarks for three years, including comparisons to slaves and monkeys); *Postell v. Lane*, No. 12-527, 2014 WL 4925665, at *6 (M.D. La. 2014) (supervisor, among other offensive statements, told African-American sales employees to go pick cotton and directly referred to African-American employees as monkeys).

The display of the image at issue does not rise to the level of severe or "extremely serious" conduct. *See Faragher*, 524 U.S. at 788. Nor does it indicate pervasive harassment. Plaintiff was employed at defendant's Metairie location for about one year, and the objectionable image was

11

displayed for only a few days.[38] Moreover, a coworker's alleged comment that the image bore a likeness to plaintiff may have been objectively offensive, but it does not indicate severe or pervasive harassment. *See Harris*, 510 U.S. at 21 (explaining that the "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII" (internal quotation marks and alterations omitted)).

Plaintiff further asserts that he was treated differently than non-African-American employees because he was required to comply with store policy to complete daily poultry logs; he was ordered to grind whole bone-in chickens for a customer; he was not afforded enough time on the clock to maintain the meat case; and his supervisor ignored, delayed, or denied his scheduling requests.[39] But these allegations do not plausibly show that plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. As noted in the Court's previous order, plaintiff does not state that completing poultry logs is particularly unpleasant or abusive.[40] Nor does plaintiff allege that grinding bone-in chickens is a humiliating or unpleasant task. The amended complaint

---

[38] R. Doc. 34 at 6 ¶ XVIII.
[39] R. Doc. 34 at 6-8.
[40] R. Doc. 33 at 11.

instead asserts that plaintiff objected to grinding bone-in chickens because he believed doing so would violate store policy and federal regulations and potentially damage the meat grinder.[41] Plaintiff's factual allegations regarding his work schedule similarly fall short of the kind of extreme conduct required to show a hostile work environment. *See Faragher*, 524 U.S. at 788.

Plaintiff's conclusory assertions that he and other African-American employees were often yelled at with condescension and treated in a degrading manner[42] cannot substitute for the inadequacy of his specific factual allegations. The sole specific example of degrading treatment in the amended complaint is the allegation that plaintiff's supervisor berated him in front of a customer and threw a chicken at him when he refused to grind bone-in chickens.[43] The Court granted plaintiff leave to amend his hostile work environment claim, but the amended complaint does not describe additional instances of verbal abuse or degrading treatment. Notably, plaintiff does not allege that he was ever subject to explicitly race-based comments or abuse at the Metairie store.

---

[41] R. Doc. 34 at 8 ¶ XXIV.
[42] *Id.* at 5 ¶ XVII.
[43] *Id.* at 8 ¶ XXIV.

The Fifth Circuit has found that plaintiffs failed to satisfy the legal standard for a hostile work environment in cases involving offensive comments and other acts that were objectively more serious and explicitly race-based than the conduct alleged by plaintiff here. *See White v. Gov't Emp. Ins. Co.*, 457 F. App'x 374, 380-81 (5th Cir. 2012) (holding that a manager's reference to an African-American client as a "nigger" in the plaintiff's presence, his comment that the African-American plaintiff "always wanted to be a white female," and his reference to the office as a "ghetto" and a "FEMA trailer" were insufficient to support a hostile work environment claim); *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (finding that a supervisor's "highly objectionable" conduct did not satisfy the legal test for a hostile work environment, despite allegations that the supervisor called plaintiff a "damn nigger," directed other insults at plaintiff, and forced plaintiff to go to the bathroom in the woods).

Although plaintiff argues that his allegations of ongoing retaliation are relevant to his hostile work environment claim, he does not offer factual allegations to indicate that any retaliatory acts were based on his race. Because plaintiff has failed to plausibly allege a pattern of race-based harassment, alleged incidents of harassment not based on race do not support his hostile work environment claim. *See Hernandez v. Yellow*

*Transport, Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (declining to consider "incidents of harassment not based on race" because the plaintiffs failed to show "that the alleged non-race-based harassment was part of a pattern of race-based harassment"). Even if allegations of retaliatory harassment were relevant to plaintiff's hostile work environment claim, the amended complaint does not include facts to suggest that plaintiff was subject to ongoing retaliatory harassment. Plaintiff instead alleges retaliation in connection with specific employment decisions, including his desired transfer to defendant's Broad Street store in New Orleans and his suspension and termination.[44]

Considering all the facts alleged in the amended complaint and drawing all reasonable inferences in favor of plaintiff, the Court finds that plaintiff fails to plausibly allege the existence of a racially hostile work environment at defendant's Metairie store. Plaintiff had the opportunity to amend his complaint to state a hostile work environment claim, but failed to remedy the deficiencies in his complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court thus dismisses plaintiff's hostile work environment claim with prejudice.[45]

---

[44] R. Doc. 34 at 4-5, 8-10.
[45] Defendant also moves, in the alternative, to strike all allegations stemming from alleged events that occurred in Houston before June 2015.

## 2. *Racial Discrimination*

"To establish a discrimination claim under Title VII or § 1981, a plaintiff must prove that he or she was subject to an 'adverse employment action'" because of race. *Thompson*, 764 F.3d at 503. Adverse employment actions "consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* Although the complaint need not make out a *prima facie* case of employment discrimination to survive a motion to dismiss, the plaintiff must allege sufficient facts to suggest that he suffered an adverse employment action because of his race. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Plaintiff contends that he has stated claims for racial discrimination in connection with his suspension and termination.[46] The Court previously dismissed these claims because the complaint failed to allege facts to suggest that plaintiff's suspension and termination were connected to his race.[47] The amended complaint does not include any additional factual allegations to

---

*See* R. Doc. 35. Because the Court dismisses plaintiff's hostile work environment claim with prejudice, it need not address the motion to strike.
[46] R. Doc. 36 at 19-20.
[47] R. Doc. 33 at 15-16.

cure these deficiencies. Accordingly, plaintiff's claims that he was suspended and terminated because of his race are dismissed with prejudice.

Plaintiff asserts that he suffered additional adverse employment actions because of his race, including interference with his desired transfer to defendant's Broad Street store, repeated verbal abuse and reprimands, disparate enforcement of certain regulations, disparate treatment of scheduling requests, and instructions to violate Whole Foods policy.[48] But the amended complaint does not allege facts to suggest that plaintiff was denied a transfer because of his race. Moreover, none of these alleged acts qualify as adverse employment actions redressible under Title VII or § 1981. *See Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 285 (5th Cir. 2015) (explaining that "less favorable work assignments . . . do not constitute adverse employment actions"); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (noting that "[i]t is well established that the denial of a purely lateral transfer is not an adverse employment action redressible under Title VII"); *McGrath v. State ex rel. Dep't of Health & Hosp.*, 253 F.3d 706, 2001 WL 498783, at *3 (5th Cir. 2001) (finding that additional duties and an involuntary change in employee's schedule did not qualify as adverse employment actions).

---

[48] R. Doc. 36 at 18-19.

Because the amended complaint fails to plausibly allege that plaintiff suffered an adverse employment action because of race, his claims of racial discrimination are dismissed with prejudice. Plaintiff argues that the Court should not dismiss his claims against Defendant Whole Foods Market, Inc. because it did not join in the motion to dismiss.[49] But plaintiff makes identical allegations against both defendants, and he had a full opportunity to defend the sufficiency of his complaint. The Court thus dismisses plaintiff's claims against both defendants. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010); *Associated Recovery v. Does 1-44*, No. 16-1025, 2018 WL 1517863, at *17 (N.D. Tex. 2018).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's partial motion to dismiss. Plaintiff's claims of religious discrimination, racial discrimination, and a hostile work environment under Title VII and 42 U.S.C. § 1981 are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __15th__ day of May, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[49] R. Doc. 36 at 1 n.1.